**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

                                  No. 19-CR-04659 MV

      v.

JOSE RUBEN GARCIA,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on the sentencing of Defendant Jose Ruben Garcia. On July 1, 2020, Mr. Garcia pled guilty to a one-count indictment charging him with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. Doc. 12, Doc. 25 at ¶ 2. He came before the Court for sentencing on December 2, 2020. Doc. 35. After considering the parties' arguments, the United States Probation Office's recommendation, Mr. Garcia's allocution, and the factors set forth in 18 U.S.C. § 3553(a), the Court varied downwards from Mr. Garcia's advisory guidelines range and sentenced him to imprisonment for a period of time served plus four weeks so that he could immediately receive intensive inpatient substance abuse treatment for the drug and alcohol addictions that contributed to the instant offense and his criminal history more generally. Doc. 35. The Court also imposed two years of supervised release and ordered Mr. Garcia to comply with a number of special conditions, including that he successfully complete intensive inpatient substance abuse treatment at the Four Winds Behavioral Health Center in Rio Rancho, New Mexico, followed by outpatient substance abuse treatment; that he participate in a community-based program that provides education and training on anger management; that he participate in a vocational training program; that he provide his probation

1

officer with information on his income and expenses and work with his probation officer to establish a budget and a savings account; and that he complete 20 hours of community service. Doc. 36 at 5–6.

Although the Court explained its sentence in depth at Mr. Garcia's December 2, 2020 sentencing hearing, this memorandum opinion and order will provide the Court's complete analysis of the § 3553(a) factors and the reasons it chose to vary downwards from the advisory range of imprisonment recommended in this case by the United States Sentencing Guidelines.

**DISCUSSION**

Jose Ruben Garcia is before the Court for sentencing in case number 19-CR-04659. Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), this Court must consider the advisory United States Sentencing Guidelines as well as each of the additional factors stated in 18 U.S.C. § 3553(a) in imposing a reasonable sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a).

Mr. Garcia pled guilty to Count 1 of a one-count indictment charging him with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Doc. 12, Doc. 25 at ¶ 2. He accepts responsibility.

The United States Probation Office prepared a Presentence Investigation Report (PSR) in this case. There have been no objections to the PSR and the Court adopts its factual findings.

The Total Offense Level is **17** and the Criminal History Category is **III**. Mr. Garcia's advisory guidelines range of imprisonment is therefore **30 to 37 months**. All parties agree, however, that Mr. Garcia is entitled to a downwards departure pursuant to U.S.S.G. §5K2.23 due to a six-month and 12-day sentence he has already served in a related tribal case for the conduct at issue in this case. *See* Doc. 25 at ¶ 39. The Court finds that a departure under §5K2.23 is

appropriate and it will accordingly adjust Mr. Garcia's guidelines range downwards by six months and 12 days to account for the time he has already served in the related case. Probation recommends a sentence of 30 months of imprisonment followed by two years of supervised release. Doc. 26. The government also requests a sentence of 30 months, which already takes into account the departure for the related tribal case. Doc. 28 at 1. Mr. Garcia requests a sentence of 15 months, which would require a roughly nine-month downwards variance from his adjusted guidelines range. Doc. 27 at 1. Although Mr. Garcia was arrested in this case on June 22, 2019, he spent the first year of his incarceration serving in-house probation on an unrelated state case, which does not count as time credit for this case under 18 U.S.C. § 3585. For the purposes of this case, Mr. Garcia had been in custody since July 29, 2020, for a total of 127 days, or roughly four months, as of December 2, 2020.

In addition to the Sentencing Guidelines, this Court also considers the other factors set forth in 18 U.S.C. § 3553(a). That section requires the Court to consider the nature and circumstances of the offense and the history and characteristics of Mr. Garcia. *See* § 3553(a). It also requires the Court to impose a sentence that complies with the purposes of sentencing, which include (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. *Id*. In satisfying these purposes, the Court is obligated to consider each of the factors outlined in § 3553(a). The Court has considered each of those factors.

**As to the nature and circumstances of the offense:**

The events of this case took place on June 22, 2019, when police officers with the Santa Ana Pueblo received a report of a potential armed robbery at a residence. Doc. 25 at ¶ 6. The property owner, Mr. Gallegos, told the police that he was working in his field when his son, R. Gallegos, called him and told him that Mr. Garcia had entered their home with firearm. *Id*. at ¶¶

3

6–7.  Mr. Garcia sat on the couch next to R, who was watching television at the time.  *Id*. at ¶ 7.

Also present in the home were Mr. Gallegos' wife and two minor children, who were upstairs.  *Id*.

Mr. Garcia told R that he was running from "two Mexicans."  *Id*. at  ¶ 8.  He then stood up and left

the firearm on the couch, at which time R took possession of it and removed five rounds of

ammunition.  *Id*.  Mr. Garcia did not threaten R in any way.  *Id*.

When police officers arrived, they observed Mr. Garcia walking out of the Gallegos

residence.  *Id*. at ¶ 9.  He was sweating and stated that two unknown Mexicans were hiding inside

of his home, which was next door.  *Id*.  The officers then went to Mr. Garcia's home and found his

girlfriend, Amanda Apodaca, yelling.  *Id*.  She reported that Mr. Garcia was high on meth and that

he had fired three to four rounds inside the home.  *Id*.  Mr. Garcia admitted that he had used

methamphetamine that day and later admitted in a post-arrest statement that he had picked up his

gun and fired shots inside of his home because he thought he heard someone there.  *Id*. at ¶¶ 10–

11.  Ms. Apodaca never saw anyone enter the home and the responding officers did not find anyone

there either.  *Id*. at ¶ 9.  At the time Mr. Garcia possessed the firearm and ammunition in this case,

he was prohibited by law from doing so due to two prior felony convictions.  *Id*. at ¶ 13. In his

sentencing memorandum, Mr. Garcia explains that he had been awake for several days prior to the

incident and was in a drug and alcohol-induced delirium.  Doc. 27 at 1.

**As to the history and characteristics of Mr. Garcia**:

He is 37 years old.  Doc. 25 at 3.  He was born in Albuquerque, New Mexico to Mary Ann

Garcia, age 58, and Leon Garcia, who passed away last April from stomach cancer.  *Id*. at ¶ 50.

The death of Mr. Garcia's father was very sudden to the family because he did not disclose his

cancer diagnosis until all treatment options had been exhausted.  *Id*.  Mr. Garcia took care of his

father prior to his death and the family has supported one another emotionally in the time since.

*Id*.

Mr. Garcia grew up on the Santa Ana Pueblo. *Id*. He has three siblings: Gilbert Garcia, who is 34; Richard Garcia, who is 28; and Reggie Garcia, who is 18. *Id*. at ¶ 51. Mr. Garcia's siblings continue to live on the Pueblo and are in good health. *Id*. Mr. Garcia told probation that he and his brothers played sports together when they were younger and they did not experience any abuse in the home. *Id*.

Mr. Garcia was in a relationship with Angenita Davis, who is 37, from 2000 to 2005. *Id*. at ¶ 57. They have two children together: Adrianna Garcia, who is 17, and Jadon Garcia, who is 15. *Id*. Ms. Davis and the children reside in Albuquerque and Mr. Garcia saw them on a regular basis prior to his arrest in this case. *Id*. He was then in a relationship with Starlene Eagle Star, who is 34, from 2004 to 2005. *Id*. at ¶ 58. They have one child together, Victor Garcia, who is 14. *Id*. Victor and Starlene reside in Deming, New Mexico and Mr. Garcia has not spoken with them since 2015. *Id*. Most recently, Mr. Garcia was in a relationship with Erica Pasqual, who is 37, from 2006 to 2011. *Id*. at ¶ 56. They have two children together: Kayla Garcia, who is 10, and Luke Garcia, who is 9. *Id*. Erica and the children live on the Santa Ana Pueblo and Mr. Garcia had joint custody of Kayla and Luke prior to his arrest. *Id*. Mr. Garcia's mother, Mary Ann, told probation that he is a loving father who cares very much for his children and who tried to be there for them whenever he could. *Id*. at ¶ 55. She continued that the children love Mr. Garcia very much and his absence has been difficult for them. *Id*.

As to education, Mr. Garcia graduated from the Independent High School in Rio Rancho, New Mexico in approximately 2001. *Id*. at ¶ 71. He later attended welding classes at Central New Mexico Community College in 2014 and 2015 but did not complete the program due to a parole revocation. *Id*. As to employment, Mr. Garcia worked in maintenance at the Santa Anna Golf

Course from 2007 to 2011.  *Id*. at  ¶ 72.  He was then unemployed from 2011 to 2016 due in part to his substance abuse and incarceration.  *Id*.  He later worked as a mover and an installer for Innovative Moving Systems in Albuquerque from 2016 to 2017.  *Id*. at ¶ 73.  Mr. Garcia has most recently been unemployed since January 2019, when he took a leave of absence from work to assist in the care of his dying father.  *Id*. at ¶ 52.

As to mental health, Mr. Garcia told probation that he had not experienced any concerns related to mental or emotional health prior to his arrest in this case.  *Id*. at ¶ 63.  His mother also told probation that she was unaware of any mental health diagnoses or medications prescribed.  *Id*. at ¶ 64.  Probation notes, however, that Mr. Garcia had been taking Lithium, a mood stabilizer, while at the Cibola County Correctional Center for depression and anxiety.  *Id*. at ¶ 63.  The PSR also notes that Mr. Garcia took the loss of his father very hard and that he is still in the grieving process.  *Id*. at  ¶ 66.  Mr. Garcia has expressed interest in counseling to help him cope with the loss, and the Court agrees that counseling would be helpful.  *Id*.

As to substance abuse, Mr. Garcia began to drink alcohol at the age of 14 and began to drink regularly between the ages of 21 and 23.  *Id*. at ¶ 65.  He has several alcohol-related convictions, including convictions for Driving While Intoxicated at the ages of 19, 21, and 34.  *Id*. at ¶¶ 31, 32, and 38.  Mr. Garcia told probation that he was sober for approximately nine months in 2018 and 2019 but then relapsed around the time of his father's death.  *Id*. at ¶¶ 65–66.  He was then drinking on a regular basis until his arrest in the instant case.  *Id*.  Mr. Garcia also began to use methamphetamine after his father died and was under the influence of the drug when he was arrested in this case.  *Id*. at ¶ 68.  His mother, Mary Ann, told probation that Mr. Garcia drank to cope with his grief over his father's death and that he would benefit from counseling for his drug and alcohol abuse.  *Id*. at ¶ 70.  She also believes that the woman Mr. Garcia was seeing at the time

of his arrest, Ms. Apodaca, was a bad influence and may have contributed to his drug use.  *Id*.

Mr. Garcia expressed remorse for his actions to probation and acknowledged the negative effects alcohol has had on his life.  *Id*. at ¶ 53.  Going forward, he hopes to abstain from drugs and alcohol, to mend his relationship with his children, and to stay away from negative influences more generally.  *Id*.  He also hopes to return to school to earn a business license.  *Id*.  Mr. Garcia intends to live in a residence he owns on the Santa Ana Pueblo upon his release from custody.  *Id*. at ¶ 54.  Probation visited the residence this summer and found that it is in good condition and does not pose any concerns.  *Id*.

**With respect to the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to promote public safety:**

Although this case is nonviolent, it involves Mr. Garcia illegally possessing a weapon and firing that weapon several times inside of his own home while delirious from drugs, alcohol, and a lack of sleep.  He then made his way into his neighbor's home with the weapon still in hand.  Mr. Garcia is lucky that he did not hurt or kill anyone in his own home, and he is lucky that his neighbor's son, R, reacted calmly and had the presence of mind to take the weapon away from him and unload it when the opportunity arose.  Although it does not appear that Mr. Garcia meant to frighten or endanger anyone, his actions in this case were dangerous nevertheless.

**With respect to deterrence:**

Mr. Garcia received five criminal history points, placing him in Criminal History Category **III**.  Doc. 25 at ¶ 41.  The Court notes that he also has three tribal convictions for which criminal history points were not assigned.  *See id*. at Pages 7–10.  Mr. Garcia's first conviction came at the age of 19, when he was convicted of Driving While Intoxicated (DWI) in Sandoval County Magistrate Court.  *Id*. at ¶ 31.  He subsequently sustained two additional DWI convictions: one in

2004 at the age of 21 and one in 2018 at the age of 34. *Id*. at ¶¶ 32 and 38.

Mr. Garcia also has several convictions for violent offenses. In 2008, at the age of 25, he was convicted of Battery Against a Household Member in the Tribal Court for the Santa Ana Pueblo after he reportedly pushed his girlfriend at the time, Erica, and threw her onto a bed. *Id*. at ¶ 33. Two years later, in 2010, he was convicted of Aggravated Battery (Great Bodily Harm) and Burglary in the Thirteenth Judicial District Court in Sandoval County, New Mexico, after he and one other person attempted to carjack a woman and then hit bystanders with a baseball bat when they tried to intervene. *Id*. at ¶ 34. Mr. Garcia was sentenced to three years of imprisonment for that offense. *Id*. Five years later, in 2015, he was convicted of Battery on a Peace Officer in Santa Ana Pueblo tribal court for spitting in a police officer's face during an arrest. *Id*. at ¶ 35. He appeared drunk at the time. *Id*. The next year, in 2016, Mr. Garcia was convicted of Aggravated Battery, again in Santa Ana Pueblo tribal court, for beating someone up in retaliation for an earlier fight. *Id*. at ¶ 36.

Finally, in 2017, Mr. Garcia was convicted of Bringing Contraband into Jail in the Thirteenth Judicial District Court in Sandoval County after correctional officers found over 38 packets of Suboxone on his person during a strip search. *Id*. at ¶ 37. In March of last year, officials at the Cibola County Corrections Center also found half of a strip of an orange substance in Mr. Garcia's pod, which was later determined to be Buprenorphine, an opioid painkiller that is used to treat opioid addiction. *Id*. at ¶ 43.

Mr. Garcia also has several arrests for offenses including Battery, Battery Upon a Household Member, and Child Abuse. Several of these cases involved allegations of domestic violence, but all of the cases were ultimately dismissed. *Id*. at Pages 11–13.

**Finally, with respect to rehabilitation:**

Mr. Garcia is in need of intensive inpatient substance abuse treatment to address his history of alcohol and drug abuse, addictions that contributed significantly to his commission of the instant offense as well as his criminal history more generally.  He is also in need of vocational training to help him develop job skills and training and education on anger management to address his history of domestic violence.

## CONCLUSION

On the whole, Mr. Garcia's actions in this case were frightening, and he is lucky that they did not lead to someone getting hurt or even killed.  His criminal history is also very concerning and reflects a man who has at times been out of control and, quite frankly, scary to those around him.  The Court ultimately believes, however, that much of Mr. Garcia's criminal behavior has been a product of his longstanding substance abuse and addictions.  In a state of addiction, he has been unpredictable and a danger to innocent people around him, people like his children and his fiancé.  Drugs and alcohol have turned Mr. Garcia from a good man and a loving father into someone that nobody would like to live next door to and someone with whom his children would be embarrassed to be associated.

To address Mr. Garcia's behavior in this case and his pattern of recidivism, then, the Court must address his addictions.  The problems that led to the instant case will not be solved by sending him to prison for several years; instead, Mr. Garcia must understand how serious his addictions are and that if he continues to fail to address them, he will not be there for his children the way he wants to be.  He will not be around for Christmas, or for Father's Day, or for his children's birthdays, nor for the many little moments in his children's lives that are even more important than these big occasions.  Intensive inpatient treatment will address Mr. Garcia's addictions by making

him think about the things that cause him pain and by forcing him to examine why he has continued to use alcohol and drugs when every time he uses bad things happen, he ends up in jail, or he ends up hurting people.  Treatment will help Mr. Garcia confront the painful things in his life so he can move beyond them, so they can become things of the past and so that he can start living in the present, where he can focus on his children and being there for them.

For these reasons, the Court ultimately believes that factors set forth in § 3553(a), including the need to protect the public from further crimes committed by Mr. Garcia, and the need to provide Mr. Garcia with needed medical and correctional treatment in the most effective manner, call for a term of imprisonment that will allow Mr. Garcia to receive intensive inpatient substance abuse treatment as soon possible rather than one that would require him to remain incarcerated in the Bureau of Prisons for several additional years, where he would be unlikely to get the level of treatment he so desperately needs.  The Court accordingly varied downwards from Mr. Garcia's guidelines range and sentenced him to imprisonment for a period of time served plus four weeks.  Doc. 36 at 2.  The Court also imposed two years of supervised release and ordered Mr. Garcia to comply with a number of special conditions aimed at helping him overcome his addictions and start building the tools he needs to live a productive, law-abiding life.  *See id*. at 3–6.  More detail on those conditions of supervision can be found in the criminal judgment in this case.  *See id*.

Dated this 6th day of January, 2021.

MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE